The Honorable Brent Haltom Prosecuting Attorney Eighth Judicial District Miller County Courthouse Texarkana, AR 75502
Dear Mr. Haltom:
This is in response to your request for an opinion on several questions concerning the mayoral situation in Stamps, Arkansas, a city of the second class. You state that the elected mayor suffered a stroke in April, 1995. She has not acted or worked as mayor since the stroke. The City has authorized the City Recorder-Treasurer to assume the duties as Acting Mayor. Your specific questions in this regard are as follows:
 1. If the stroke has rendered the current elected Mayor unable to perform in that capacity, may the City Council, upon motion, declare a vacancy and proceed according to the law governing such contingencies?
 2. In the event the physical effects of the stroke have rendered the Mayor incapable of mentally performing her official duties (unsupervised), is she capable of forming the mental intent necessary to the state of mind which might be necessary for acts of malfeasance or nonfeasance?
 3. Can the City legally reduce her monthly salary or take any action that might affect her financial benefits in light of the fact she was compensated as a "full time Mayor"?
My research indicates that the answer to your first question is "no." There is no provision for the city council's declaration of a vacancy in that instance. Arkansas Code Annotated § 14-42-111 (1987) addresses the incapacity of the mayor of a second-class city or town, and states:
 Whenever the mayor of an incorporated town or city of the second class is unable to perform the functions of his office, or is absent and cannot be obtained, the recorder of the town or city shall be authorized and empowered to perform the functions of a magistrate during the disability or absence of the mayor, with all the power and jurisdiction of the mayor, to all intents and purposes whatever.
I assume that the City has acted pursuant to this provision in authorizing the Recorder-Treasurer[1] to assume the duties of Mayor. Unlike cities of the first class and counties, cities of the second class have apparently not been authorized to fill the vacancy which, by statute, is declared to exist in the event the mayor of a first class city or an officer of the county becomes disabled. With regard to counties, A.C.A. § 14-14-1308(11) (1987) provides that a county, county quorum court district, or township office "shall be considered vacant if . . . [t]he quorum court determines that the incumbent has become disabled to the degree that he cannot perform the duties of his office." Section 14-14-1309 sets forth the procedure for the quorum court's declaration of a vacancy in that instance. In the case of cities of the first class, A.C.A. § 14-43-401 (1987) states that where the unexpired term is less than six months, the city council may appoint someone to act in case of mayor's disability. A.C.A. § 14-43-401(b)(1). If a special election must be held because the unexpired term is greater than six months, the city council may appoint an acting mayor to serve until the office is filled at the special election. A.C.A. § 14-43-401(b)(2).
The absence of statutory authorization for a second class city to fill a vacancy in the case of disability, coupled with the provision in §14-42-111, supra, for the recorder to step in as mayor, compels me to conclude that the city cannot act in this instance to declare a vacancy and proceed accordingly.[2]
With regard to your second question, this will ultimately require a factual determination. It is clear with regard to "nonfeasance" as a ground for removal from office that the officer must have acted "willfully and knowingly" in failing or refusing to execute the laws.See A.C.A. § 14-42-109(a)(1)(A) (1987). If the incumbent Mayor lacks the mental capacity to perform her duties, it seems unlikely that her failure to perform would be deemed willful or knowing. As stated, however, fact questions may arise in this regard.
Regarding any alleged acts of "malfeasance," it may well be that, similarly, the necessary element of intent would be lacking. The particular statutory basis for the claim would, however, have to be considered. My research has yielded no general provision addressing "malfeasance" in the office of mayor. I am therefore unaware of the culpable mental state in this regard.[3]
It is my opinion that the answer to the first part of your last question is "no" with regard to salary. Arkansas Code Annotated § 14-42-113 (1987) states that "[t]he salaries of officials of cities of the first and second class and incorporated towns may be increased, but not decreased, during the term for which the officials have been elected or appointed."
Regarding "financial benefits," it seems unlikely that a reduction in benefits would be authorized as long as the Mayor remains in office. However, this is probably governed by local ordinance or resolution, in the absence of a controlling state law.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] The combination of the offices of city recorder and city treasurer is authorized in A.C.A. § 14-44-114 (1987).
[2] While the city may wish to consider resorting to the courts in an effort to have a vacancy declared, it must be recognized that A.C.A. §14-42-111, supra, may effectively preclude relief inasmuch as that Code provision appears to contemplate the recorder's service as mayor during the disability.
[3] Under the Arkansas Criminal Code, if the statute defining the offense does not prescribe a culpable mental state, culpability is established only if the person acts "purposely, knowingly, or recklessly." A.C.A. § 5-2-203 (Repl. 1993).